Our last case for argument is Ramos v. Hertz Corporation. Good morning, Your Honors. My name is Mark Levy and I represent the appellant, Jenny Ramos, who brought this case as an assignee of Mr. Benavides. Did you ask that this case be certified to the Colorado Supreme Court? We did not, Your Honor. Did your opposing counsel? He did not, Your Honor. Should we? Maybe. I don't think it's necessary, Your Honor, because we think that predicting what the Colorado Supreme Court would do with the initial permission rule, which is essentially what this is about, we think it's pretty simple. We think it's pretty easy based upon the case law that exists. However, I... This is going to affect all kinds of insureds throughout Colorado. It has the potential to. That's correct. This is an important issue. It's important. So why should... Nobody appointed us to the Colorado Supreme Court, except for one of us. Except for one, right. She's not on it anymore. But she brings her knowledge to us. Maybe we should all just agree that Judge Iden decides the case. Well, I certainly would defer to the panel. But again, hopefully, when I'm done, everybody will see that perhaps that's not necessary, but if there's a question, certainly so. So where we start from here, the question is whether or not Mr. Benavides is an insured under the insurance policy issued by Hertz. Hertz has, several times over the years, gone to the Colorado courts, first in a case called Bolke-Meltz, and then in the case called Metro Property and Casualty versus Hertz, and now in this case, and argued the proposition that its rental contract can change the terms of an insurance policy. And every time, they have been rejected, including by the Colorado Supreme Court in Metro Property and Casualty versus Hertz. Has the law changed so that initial permission rule is no longer applicable? No, Your Honor. That is, in fact, the ruling that the trial court made. And to that ruling, I say, okay, so what? So what that the law has changed? So it is true that the initial permission rule, which has been since 1996, and I also think it's important that it has never been overturned by a trial court or a court of appeals or the Colorado Supreme Court in that period of time. If the statutory basis from which the rule sprang has changed, has been revised, isn't that relevant? Well, Your Honor, I'm going to submit to the court that the public policy reasons for adopting the initial permission rule has not changed at all. So the initial permission rule was adopted by the Wigglesworth case in 1996 according to the Colorado No Fault Act. And the Colorado No Fault Act, the public policy behind it was not simply to avoid inadequate compensation of victims. And this is one thing I want to point out here, and I really need to just mention here, and I promise, Your Honor, I'll finish this line. But there are a lot of bad facts here that have been alleged about Mr. Benavides and Mr. George. And it's probably pretty clear that Mr. George, the renter, violated the rental contract. But again, those are two different lanes. You have the rental contract, and then you have the insurance. And what I'm going to submit to the court is that as soon as you are an insured, whether you're a bad person or not, or a bad actor, or have done things that violate the rental contract, you remain an insured. And all of the- That's the real question in this case. Who is the insured? The insured is- Is it Hertz? Well, Hertz is the named insured. Yeah. And then the- What does the endorsement say? Would you quote the endorsement to us? Well, the entire endorsement? Sure. Well, it's not that long, is it? Well, there are two different endorsements. I'm happy you do it just because I'm having a difficult time focusing on it here. Well, first of all, one of the endorsements says that we're not going to provide insurance for anybody other than the authorized driver, and that includes your spouse. I thought that the endorsement said that a renter was going to be considered you. Not in those words, but in that effect. Well, what the endorsement does is add an additional insured. The original policy says you are an insured. You is Hertz. And then the endorsement says the renter becomes you under the endorsement. Well, I would, again, I hate to be really technical here. Well, I thought that helped you. I didn't mean to- No, no. I don't want to be technical here. I didn't mean to jerk you here. I just thought that's what it said. But we have a liability policy that says who is an insured, and that includes anybody who is using the vehicle with permission, and that is Colorado law. Then we have endorsements that cannot contradict Colorado law, and the endorsement says we're going to add additional insurance. It didn't say we're taking away any insurance. Right. Exactly. So our position is that we're still left with a policy that says anyone using the vehicle with permission is insured. And then they have endorsements that cannot contradict Colorado law. So for example, the endorsement- Well, I tried to focus here, but it says under an endorsement operative at the time of the authorized drivers. Now let's go to renters. Renters would be the person who signed the rental agreement. Correct? Mr. George. Yes, sir. So in answer to Judge Briscoe's question, does who is you refer to, you necessarily includes Hertz, but under the endorsement, it also includes the renter. Yes, sir. And our contention is that under the original policy, it also includes anyone using the vehicle with permission. And then the question is, what does that permission have to consist of? What is the quality of that permission? And the Wigglesworth case established in the Colorado Supreme Court, that the quality of that needs to be, once you give initial permission, then any other use, whether it's violating express permission, because you're going to a drag race. Now Judge Briscoe, you asked about the law being changed. Now we don't think it makes a width of difference that the law being changed, because at the same time that the no-fault law went away, the Colorado legislature also adopted 427102 and 10-4-601 and 632. 601 says you must have compulsory automobile insurance. So that was a replacement for the no-fault. And the public policy behind it, under 427102, it says the General Assembly is acutely aware of the toll in human suffering and loss of life, land, and property caused by the negligence in the operation of motor vehicles. The General Assembly is also very much concerned with the financial loss visited upon innocent traffic victims by negligent motorists. And that is the policy of the state to induce and encourage all motorists to provide for their financial responsibility. This is referenced again in the Bailey v. Lincoln general case, which we have cited. That is the policy of the state to induce and encourage all motorists to provide for their financial responsibility for the protection of others and to assure the widespread availability to the insurance public of insurance protection against financial loss caused by negligent, irresponsible motorists. And finally, in Colorado, there is a strong public policy in favor of protecting tort victims. This is fundamental purpose of insurance coverage, whether or not the state makes a particular coverage mandatory to obtain. And I'm also going to cite the Bucklemel's case, which was adopted by the Supreme Court in Wigglesworth, talks about three different public policy considerations, two of which have nothing to do with this particular argument about protecting tort victims. And one thing I want to make sure that is clear about this is this has nothing to do with protecting the insured who buys insurance. The whole public policy here is to protect the victims of automobile accidents because otherwise their medical care is going to go on the public dole, et cetera, et cetera, et cetera. Well, I'm guessing that you're not arguing that regardless of what the statutes say that this court can say on our own that we agree, disagree, or want to go someplace else because of some public policy that we think is important. That can't be the rule. I'm arguing, Your Honor, that if you look at the public policy that drove the Colorado Supreme Court to adopt Wigglesworth almost 25 years ago, it is the same public policy that exists today. Does Wigglesworth say that it's based on public policy? Yes, sir. It does. Do you have it in front of you? I do. But it dealt only with insurance mandated by the No Fault Act. Correct. And that law was changed to insurance mandated by a different act. We still have mandatory insurance coverage, which is the public policy to protect victims, not to protect drivers. And Wigglesworth relies a lot on the Bucklemouth case. And I know I have both of them here somewhere. But the public policy is in addition to that. It's that a case-by-case inquiry would lead to proliferation of litigation. That was policy number one that Wigglesworth used to say, we're going to adopt the initial permission rule. Policy number two is that it would promote the remedial effect. Oh, policy number two is that proliferation of litigation, which would result in inconsistent results. So it's kind of an administrative determination under Wigglesworth. And number three. Well, counsel, can I just, before you get to number three, so aren't they saying there that no fault is supposed to be easier, right? Administratively easier. So the person who has the insurance policy, the first party, insured, has to pay for everything, no matter what happens down the line. That's just easier. And your honor, I apologize, but I'm going to disagree with that. Well, that's why I asked the question. One portion of no fault is the payment of medical bills. The other part of no fault was mandatory liability insurance to protect victims of auto accidents. Again, two separate lanes. And so while the concept is that it would be easier to get your medical bills paid for, the liability insurance component doesn't matter at all. And so again, Wigglesworth, the Colorado Supreme Court, said we're going to adopt the initial permission rule because it's administratively easier and it would also promote the remedial effect of avoiding inadequate compensation to victims of an auto accident and require people to buy insurance. Those things still exist today. I guess I'm trying to get you to focus on the administratively easier part. With no fault gone, we now, we're not saying the first party insured should pay for everything because that's administratively easier. And that's just not what Wigglesworth said. Wigglesworth says that we don't want inconsistent results having to determine in every single case whether they had permission to do A or B or C. And that, it was 100% on the liability question. It had nothing to do with making it easier to get medical bills paid. That whole scenario. Wigglesworth had nothing to do with that. So it's undisputed. And do we have new law? And do we have new law 10-4-608C exemptions? And it says that part 6 shall not apply to any policy arising out of a motor vehicle rental agreement or any self-insurance thereof. Meaning that we have an exclusion of the very situation before us. No, Your Honor. This is briefed in document number 38 below. We did not address it in our appeal because ultimately Hertz admitted that there was insurance. And the Passamano v. Travelers case actually said that that was a misnumbering of the statute. So what law? There is no exclusion now exempting rental. Correct. That just doesn't exist. Correct. That's Passamano v. Travelers, 882p2-1312. And this document 38, what's the name of that pleading? That is our response, I believe, or it might be our reply to a motion for summary judgment. Okay. And that's in our record? It is in the record, Your Honor. Thank you. I'll have that signed for you. Hopefully in just a second. I'm running out of time. And I also want to mention that the trial court applied an exclusion that does not exist in the policy. That whole business with respect to converter. One thing Mario Benavides was never accused of was stealing a car. But on top of that, the statute says that an insurance company may include these kinds of exclusions. Hertz did not, or Ace did not, include these exclusions in their policy. And so therefore it was improper for the trial court to add this as an exclusion and to impart that exclusion. This is the court's reference to a converter? Is that what you're getting to? Yes, Your Honor. And then I just have to ask the court to also address the fact that the trial court made a factual finding that 30 days was unreasonable because that's now being used as alleged precedent to say that as a matter of law, it's unreasonable to only give an insurance company 30 days to respond. But since the No-Fault Act was revised, or repealed, then these other laws essentially took the same place, had the same sort of public policy, and therefore there is no reason to abandon or to assume that the Supreme Court would abandon the Wigglesworth rule based upon the state of the law. And I'm going to reserve the rest of my little time. Thank you. Okay. Thank you. May it please the Court? My name is George Parker, and I represent the Appley-Hertz Corporation in this case. I believe that, working backwards, first of all, the Bassamo case does not say that the court holdings does not say that this statute is misnumbered. Bassamo talks about UIM policies, and then it talks a little bit about the history of the transfer from the No-Fault Act to the current act. So here's what you got. Hertz Corporation has a policy of insurance through ACE. That policy of insurance says, as Judge Lucero was talking about, the policy defines who are insured, Hertz, okay? And then it has an addendum that says renters, well, Mario Benavides was not a renter. Someone else rented the building. Is that an amendment or an endorsement? Endorsement, I'm sorry. Endorsement, no problem. Yeah, I think it's endorsement 22, I believe. But the definition... I took your mind off of where you were going. Sorry, sorry. Oh, no, no, no. I'm just going right down the line here, so follow the bouncing ball. Okay, Hertz, renters, and authorized operators, and the policy... That's in the conjunctive, and. Authorized operators. And. Yes, sir. Let me give you this scenario. Okay. Husband and wife are traveling. Yes, sir. Wife forgets her billfold, not her billfold, because she's got credit cards, but she forgets her driver's license. Yes, sir. Husband goes over and rents the car, presents his driver's license. He is an insured under the endorsement, correct? He is the driver. He, the spouse, is. Yes, sir. Wait a second here. Is it because he's a renter? Wait. I'm sorry. I'm sorry. Let me track again.  He is an insured. The husband. The renter of the car is insured, yes. Okay. Now, they're traveling down the road, three hours later, he says, I'm tired. His wife is, she's an authorized, he authorizes his wife to drive the car. Accident happens. Is the husband insured? The husband, you're saying is the husband insured for the wife's negligence? Well, yes. She's driving. Well, he's insured on the policy, but he's not driving, so the question, I believe, would be, is the wife insured? Well, I want to know whether, that's the next question, but I just want to ask about the husband first. Yes, he would be insured. But not for her negligence. Right. Is that what you're saying? Yes, sir. So you would have us read an authorized driver to mean what? That he has no authority to authorize a driver, period? No, sir. What I'm saying is under this policy, what it says is author, I'm reading from it, authorized drivers means only those individuals who, number one, have a valid driver's license. Number two, are named in the rental agreement or insured contract and meet all the requirements as stated in the rental agreement. All other drivers are unauthorized, including spouses, except where required by statute. So what that means, Your Honor, is that you can go to the hers rental counter and say, I want to drive the car and here's my wife with me on vacation. Right. And here's her driver's license. And here's my driver's license. That's the easy case. Here's her driver's license. She's insured, obviously. Yes. But my case isn't quite as easy because the wife doesn't have a driver's license with her. She has one, but she doesn't have it with her. Then what does the policy would say? No, if you don't present a valid. If the other person who wants to drive the car doesn't present a driver's license and pay an additional nominal fee, I think $13 a day or something to cover both. $13 a day? I think so. I think so. For another driver? I'm pretty sure I'm right. Okay. Thank you. That answers my question. Thanks. No. So this is what the policy says. And you have to have a valid driver's license. You have to show it to Hertz. You have to be authorized by Hertz. In this case, what happened was, as you well know, someone rents a car, gives the permission to an unlicensed revoked driver's license shredded by the DMV, not just suspended as a habitual trafficker, drugs, alcohol crashes into a plaintiff. And then that guy comes up to Hertz and goes, hey, where's my coverage? And Hertz says, who are you and why are you here and what are you talking about? And so then, all right, so that's the background, as you well know. We've got the insurance policy that defines who's an authorized driver. Now we move over to the question that Judge Briscoe asked, and that is Colorado law. And Ms. Levy wants to say, take the No Fault Act public policy provisions and let's apply those to the new law. And the problem is you can't do that because, as the lower court correctly stated, the new law, number one, it defines and excludes converters from the definition of insured, all in the same section. It says section 10-4-601 defines converter to mean a person other than the named insured or resident relative who operates or uses a motor vehicle in a manner that a reasonable person, okay, and that's where the change came, where a reasonable person would determine that a person was unauthorized or beyond the scope of permission. And that's where, if you go down, that was section three, go down to five and it talks about insured means the named insured, relatives of the named insured who reside in the same household as the named insured, and any person using the described motor vehicle with the named insured, that's the definition of insured, and it talks about converters. So is the wife under that clause now insured? Yes, if it's your wife or my wife. So this contradicts the other aspects, so husbands can now rest in peace because this clause protects the wife, is that right? He would rest in peace if this law applied to his wife. This law does not apply to his wife, any Hertz rental car or any other rental car, because this law, this new law, by statute, clear and without any questions, talks about conditions and exclusions, which is 10-4-623. By the way, rest in peace, I didn't mean RIP. May I say it again? By the way, rest in peace, I didn't mean RIP because the wife is driving. That would be a pretty crass, misogynistic comment if it interpreted that way, and I didn't mean it that way. I don't interpret anything anyway. Okay, thanks. I certainly don't. I'm sorry, 10-4-608, exemptions, and this is as clear as English can be, and that says, this Part 6 does not apply to any policy, and that's the first part, and it says arising out of a motor vehicle rental agreement, and so that 608, it says Part 6 doesn't apply to rental cars. Why? I don't know. Probably because if, and this is guessing, I don't know if you want to hear guessing, but my guessing would be if anybody can walk up and rent a car and go out and leave with it and hand it to just whoever, I believe the insurance would be so cost prohibitive that, Lord, you couldn't even rent a car because you don't know what's going to happen to it. It could be anything. But we were just told that I guess this was a misstatement, a missight, it's just not what it says in the reply brief and summary judgment. Opposing counsel made that very clear about that argument. Yes, and what he's, what opposing counsel is talking about is there's a case, PASAMA, that talks about UIM coverage, and also this new law says rental cars don't even have to offer UIM coverage, but this was not a UIM case. It's not talking about 608 at all. Okay. So this case rises and falls on the initial permission interpretation of Colorado law, whether it's valid or not, whether it's extant or not. Yes, sir. It's a peculiarly state question. Are you sure about that? No, but I would say yes when I'm asked a question by somebody that's got a robe on. Oh, yes, ma'am. I thought the argument here was by the appellant that they prevail because of this Colorado interpretation, Colorado law interpretation. I believe what the appellant is incorrectly stating is they want to take the old no-fault permissive use that's written in that no-fault statute, and that's why the courts say, well, let's talk about the statute and what it says, and let's move that over to the new law, which has changed and added converters and changed and doesn't have that. Let's graft it onto the new law as a matter of public policy. Or I think what they're arguing is a little different than that. What they're saying is that the definition of those words in that act are broader than the act itself and that are basically still operative because of the present laws that use similar words and that they should be interpreted in the same manner. That well could be. I think that was their argument. That well could be. But then what Judge Arguello picked up on is that the new law, 10-4, there's 10-4-601, the old law was like 10-4-700s. So we'll just talk about part six. The new law adds the definition, specifically adds the definition in 10-4-601-3 of a converter, and it discusses permissive use. And it adds that a converter, it adds, well, wait a minute. You can't just say anybody that gets permission is OK. It carves out converter as a person other than a named, insured, or resident relative who operates or uses the motor vehicle in a manner that a reasonable person would determine was unauthorized or beyond scope. And so Judge Arguello correctly took the new law and the new definition of converter and said that's not an insurer under here because it's permissive use, sure, but it's in a manner that a reasonable person would determine was beyond the scope of permission. So that modified and changed it from the old no-fault law. So then we get into the fact issue of what does Mr. Benavides look like? Is he a person that would qualify? I'm sorry? We get into the fact question of Mr. Benavides and whether or not he's a converter. And that's where the judge says, yes, it's a fact question that's based on all the evidence. There's no, it shouldn't be put to the jury. Yeah. And that's just because we also have in the record his driving history where it was revoked habitual traffic offender for, God, Lord, many DUIs and drug driving. Finally, take it away from him and someone else tosses him the keys. So let me pose the question this way. I'm driving down to Lake Powell with my buddy to go boating for the weekend. And I get tired and I rented a car and I say, okay, Jack, it's your turn. You drive a while. Unbeknownst to me, Jack has got all these problems that you've described. Is he a converter, even though I've given him permission? Is the driver a converter? Probably. If Jack, you may not know it, but Jack knows it. Isn't that a question of fact and who decides it? Is that a jury question? I don't believe so. Because number one, this law doesn't even apply to rental cars. Number two, under the facts of the case presented when the evidence was closed, and my time's up, finish your sentence. Go ahead, please. Under the facts of the case as presented, the judge was following precedent from another state and her own wisdom in saying no reasonable person is a matter of law. I mean, it's just, it's not a fact. So they were alternative rulings then? I'm sorry? They were alternative rulings by the district court. Yes. No application to rental cars. And secondly, even if you get beyond that, this guy's a converter. Yes, ma'am. Okay. Thank you. Thank you all. Correction. The district court made no such finding that it didn't apply to rental cars. That's why we didn't brief it. And there is, in fact, an insurance policy. So it doesn't matter whether it's required to be one or not. There, in fact, is one. And the case that talks about this misnumbering is Aetna Casualty Insurance v. McMichael, 906 P. 2nd 92. It's just a non-issue here. And that's in your briefing? And if it's not, could you give us a supplemental letter? Sure, I'd be happy to. Thank you. And the conflation that's going on here is while the rental agreement says you can't let somebody else use the car who doesn't have a driver's license, et cetera, that is not the law in Colorado. And that is not in the insurance policy. The permissive use law, there's no law in Colorado that says if you are a converter, you don't have insurance. It says an insurance company may include that exclusion if they desire to. And that was a statutory change after the No Fault Act went away. They did not include that in this particular policy. And so, therefore, it was error for the court to impart that condition as a requirement of being an insured. And then, of course, that was all a fact question. Thank you. Thank you. Thank you both for your arguments this morning. The case is submitted.